**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Boyd Dean WEEKLEY, Defendant–
Appellant.**

No. 96–2207.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 27, 1997.

Decided Dec. 1, 1997.

Jeffrey J. O'Hara (argued and briefed), Grand Rapids, MI, for Defendant–Appellant.

Michael H. Dettmer, U.S. Attorney (argued and briefed), Office of the U.S. Attorney for the Western District of Michigan, Grand Rapids, MI, for Plaintiff–Appellee.

Before: CONTIE, DAUGHTREY, and COLE, Circuit Judges.

## OPINION

CONTIE, Circuit Judge.

Following his convictions for kidnaping, transporting a minor in interstate commerce with the intent to engage in illegal sexual activity, and interstate transportation of a stolen motor vehicle, defendant-appellant Boyd D. Weekley ("Weekley") appeals: the district court's refusal to suppress his confession; the victim's two-way closed circuit television testimony; and his term of imprisonment. On appeal, we affirm Weekley's convictions and sentence.

## I.

On or about October 10, 1995, Weekley stole an automobile from Father Larry Rucker, a Catholic priest living in Sioux Falls, South Dakota. On or about October 14, 1995, Weekley drove the stolen automobile to a strip mall in Benton Harbor, Michigan, where he parked adjacent to a laundromat. Among the patrons at the laundromat that morning were Maria Alvarado and her four children: eleven-year old Adan; eight-year old Luis; two-year old Eleazar; and one-year old Marcella.

Shortly before noon that day, Adan and Eleazar walked from the laundromat to a nearby store to purchase a snack. As the children walked back to the laundromat from the store, they were confronted by Weekley. After Weekley told the boys that he was a police officer investigating a report that Adan had been shoplifting, Weekley grabbed the boys and pushed them into the front seat of the stolen car. Weekley hurriedly jumped in the car and drove off with the boys. Duct tape covering the door handle prevented the boys from opening the passenger-side door from the inside.

After driving the boys to a field in Indiana, Weekley covered Adan's eyes with cardboard and duct tape and fondled him. The molestation continued throughout the night and included oral sex. Weekley continued to molest Adan on a daily basis for approximately two weeks. Weekley frequently performed oral sex on Adan, and frequently forced Adan to perform oral sex on him.

On October 21, 1995, an arrest warrant was issued in the Western District of Michigan seeking Weekley's arrest for kidnaping the two children. That same day, Weekley was observed in Montgomery, Alabama. On October 23, 1995, Weekley and the children were observed in Mobile, Alabama. On October 24, 1995, Weekley and the boys were observed in New Orleans, Louisiana. Four FBI agents responding to reports that Weekley was in the area spotted Weekley standing next to the stolen automobile in the French Quarter of New Orleans. The agents immediately apprehended Weekley, patted him down, handcuffed him, and advised him of his rights. After acknowledging that he understood his rights, Weekley asked how he had been located and admitted that he kidnaped the boys in Michigan. Weekley was immediately transported to the New Orleans FBI office for processing and questioning.

Approximately an hour after his arrest, Weekley confessed that he: stole the automobile in South Dakota; kidnaped the two boys in Michigan by pretending to be a police officer; engaged the automobile's child safety locks to prevent the boys from opening the rear doors from the inside; placed duct tape over the front passenger door handle to prevent the door from being opened from the inside; kidnaped the boys with the intent to sexually molest them; and repeatedly molested Adan. Following his verbal confession, Weekley wrote a note to Adan apologizing for having "messed up your life by taking you away from your family."

On November 9, 1995, the grand jury for the Western District of Michigan returned a four-count indictment charging Weekley with: two counts of kidnaping, in violation of 18 U.S.C. § 1201(a)(1); one count of transporting a minor in interstate commerce with the intent to engage in illegal sexual activity, in violation of 18 U.S.C. § 2423(a); and one count of interstate transportation of a stolen motor vehicle, in violation of 18 U.S.C. § 2312.

At trial, Weekley unsuccessfully moved to suppress his confession. Following deliberations, the jury convicted Weekley on all counts. On September 9, 1996, the district court sentenced Weekley to concurrent life

(for kidnaping) and ten-year terms of imprisonment (for the crimes charged in the two remaining counts). Weekley was also ordered to pay a fine ($50,000), restitution ($1,405), and a special assessment ($200). Weekley also received two five-year supervised release terms, and two three-year supervised release terms, to be served concurrently. Weekley filed his timely notice of appeal on September 13, 1996.

## II.

### Standards of Review

■ We review a district court's decision to deny a motion to suppress under two complementary standards: the district court's findings of fact are upheld unless clearly erroneous, and the district court's legal conclusions are reviewed *de novo*. *United States v. Leake,* 998 F.2d 1359, 1362 (6th Cir.1993).

■ Similarly, we review the district court's factual findings supporting its decision to allow two-way closed circuit television testimony for clear error, *United States v. Carrier,* 9 F.3d 867, 870 (10th Cir.1993), and we review the legal effect of those findings *de novo. Id.*

■ The standard governing our review of a district court's sentencing determinations is well-established: "In reviewing the district court's application of the sentencing guidelines, factual findings of the district court are subject to the 'clearly erroneous' standard of review, while legal conclusions are reviewed *de novo.*" *United States v. Scott,* 74 F.3d 107, 111 (6th Cir.1996).

### Weekley's Motion to Suppress

On appeal, Weekley asserts that the district court erred by denying his motion to suppress the statements that he made to law enforcement officers on October 24, 1995, because the statements were made approximately one hour after receiving his *Miranda* rights. Moreover, Weekley asserts that he was fraudulently induced to confess by the FBI agents' false promises that he could see the boys one more time to apologize for his conduct. In response, the United States asserts that the district court properly denied Weekley's motion to suppress because Weekley failed to present evidence to support his claim that he forgot his rights during the interim between his arrest and his confession, and the FBI agents did not tell Weekley that he could meet with his victims following his arrest. We agree with the United States' assertion.

■ The record reveals that Weekley was arrested on October 24, 1995, at approximately 12:30 in the afternoon. After advising Weekley of his *Miranda* rights, the arresting officers drove Weekley to the FBI's New Orleans office for processing and questioning. While in the car on the way to the FBI's New Orleans office, Weekley began talking and was immediately reminded of his *Miranda* rights by the agents. After arriving at the FBI office, Weekley again started talking while waiting for the elevator and was again reminded of his *Miranda* rights by the arresting officers.

After processing Weekley, the FBI agents began interviewing him at approximately 1:30 or 1:35 p.m. that same day, approximately one hour (or one hour and five minutes) following his arrest and the reading of his *Miranda* rights. At no time did Weekley seek to stop the interview or ask for an attorney, though the interview was interrupted twice to provide Weekley with cold beverages. Moreover, the FBI agents noted that Weekley did not appear tired or confused. In fact, the agents conducting the interview testified that Weekley's demeanor throughout the interview was upbeat, proud, and inquisitive. Following the interview, Weekley signed a form waiving his rights.

After considering the evidence, the district court found that the United States had met its burden of establishing that "nothing occurred during the interview itself that could possibly be held to violate the requirements of *United States v. Miranda.*" Joint Appendix at 220. Moreover, the district court found, under the totality of the circumstances, that Weekley's statements were voluntarily made despite the passage of time between the reading of the warnings and the custodial interview. Indeed, the district court cited nine reasons for its conclusion:

(1) Weekley was properly advised of his rights at the time of his arrest; (2) Weekley was alert and clearly understood his rights; (3) Weekley did not assert his right to remain silent or to have counsel; (4) Weekley was twice reminded of his rights following his arrest; (5) the time period between the reading of the rights and Weekley's confession was only one hour; (6) the FBI agent that read Weekley his rights also conducted the interview; (7) nothing affecting Weekley's understanding of his rights occurred between the reading of the rights and his confession; (8) Weekley's confession was consistent with the statements that he made immediately following his arrest; and (9) there was no evidence of coercion or promises of leniency.

The factors that a court must consider when deciding whether a confession is voluntary include:

> (1) the time elapsing between arrest and arraignment of the defendant[;] (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession[;] (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him[;] (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

18 U.S.C. § 3501(b). *See also Medeiros v. Shimoda,* 889 F.2d 819, 824 (9th Cir.1989) (a court must consider the totality of the circumstances when determining voluntariness), *cert. denied,* 496 U.S. 938, 110 S.Ct. 3219, 110 L.Ed.2d 666 (1990).

At issue here is whether the *Miranda* rights given by the FBI agents to Weekley following his arrest were still in force when the agents interrogated Weekley approximately one hour later. "The courts have generally rejected a *per se* rule as to when a suspect must be readvised of his rights after the passage of time or a change in questioners." *United States v. Andaverde,* 64 F.3d 1305, 1312 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1055, 134 L.Ed.2d 199 (1996). In fact, a number of circuits have ruled that re-warning is not required simply because time has elapsed. *See United States ex rel. Patton v. Thieret,* 791 F.2d 543, 547–48 (7th Cir.) (*Miranda* rights did not need to be reread after forty minute lapse), *cert. denied,* 479 U.S. 888, 107 S.Ct. 284, 93 L.Ed.2d 259 (1986); *Evans v. McCotter,* 790 F.2d 1232, 1237–38 (5th Cir.) (rights voluntarily waived where suspect was twice advised of rights over a three-hour period notwithstanding change of interview locations), *cert. denied,* 479 U.S. 922, 107 S.Ct. 327, 93 L.Ed.2d 300 (1986); *Stumes v. Solem,* 752 F.2d 317, 320 (8th Cir.) (five-hour interval between first and second interviews did not invalidate suspect's waiver given before the first interview), *cert. denied,* 471 U.S. 1067, 105 S.Ct. 2145, 85 L.Ed.2d 502 (1985); *Jarrell v. Balkcom,* 735 F.2d 1242, 1254 (11th Cir.1984) (change in interrogators and three-hour lapse did not render confession inadmissible); *United States ex rel. Henne v. Fike,* 563 F.2d 809, 814 (7th Cir.1977) (nine hours between warnings and waiver not too long), *cert. denied,* 434 U.S. 1072, 98 S.Ct. 1257, 55 L.Ed.2d 776 (1978); *United States v. Anthony,* 474 F.2d 770, 773 (5th Cir.1973) ("[T]here is no requirement that an accused be continually reminded of his rights once he has intelligently waived them[.]").

The record reveals that Weekley received his *Miranda* rights at the time of his arrest, was reminded of his rights during his transportation to the FBI's office in New Orleans, and was again reminded of his rights while waiting for the elevator before questioning. Moreover, Weekley did not assert a desire to be represented by counsel or to remain silent at any time. Applying the totality of the circumstances test, we find that the district court properly denied Weekley's motion to suppress the statements that he made to the FBI agents on October 24, 1995.

Though Weekley also asserts that his statements were induced by the FBI agents' promise that he could see the two victims one last time, Weekley presented no evidence to support his claim that his confessions were dependent on, or in any way

752

related to, his request to see the children. In fact, Weekley suggested the meeting and the agents simply acquiesced. Because a defendant must produce clear and convincing evidence that law enforcement officers purposely misled him as to the true nature of their investigation to prevail on a claim of government deception, *United States v. Wellman*, 830 F.2d 1453, 1460–61 (7th Cir.1987), and because the FBI agents did not mislead Weekley as to the true nature of their investigation, the district court properly concluded that the FBI agents did not unlawfully coerce Weekley's confession.[1]

### Adan Alvarado's Two–Way Closed Circuit Television Testimony

■ Prior to trial, the United States filed a motion to close the courtroom and to allow alternate forms of testimony (in accordance with 18 U.S.C. § 3509) when Adan Alvarado testified. The district court conducted a hearing on this motion prior to trial. At the hearing, the United States called Mary DeYoung, Ph.D., to testify. Dr. DeYoung testified that, based upon her meeting with Adan Alvarado and her expertise in the area of child sexual abuse, Adan was afraid of Weekley and his fear would significantly impair his ability to testify if he was required to testify in Weekley's presence. In fact, Dr. DeYoung testified that, in her opinion, Adan's distress would affect his memory and his ability to communicate, but that the distress could be alleviated by allowing Adan to testify by means of videotape or two-way closed circuit television.

After questioning Adan *in camera*, the district court determined that Adan genuinely feared Weekley, and that there was a substantial likelihood that Adan would suffer emotional trauma if he was required to testify in open court in Weekley's presence. The district court therefore decided that Adan could testify from a nearby room by means of

a two-way closed circuit television, pursuant to 18 U.S.C. § 3509(b)(1)(B)(ii). The district court chose this option because it determined that the two-way closed circuit television testimony would alleviate Adan's emotional trauma while preserving, to the maximum extent possible, Weekley's right of confrontation. The district court, however, denied the government's motion to close the courtroom during Adan's testimony. Weekley's attorney, the prosecutor, and Adan's attorney were in the room with Adan when he testified.

On appeal, Weekley asserts that the district court erred by allowing twelve-year-old Adan Alvarado's two-way closed circuit television testimony. In response, the United States asserts that the district court's use of the two-way closed circuit television testimony was supported by expert testimony and the court's *in camera* interview with Adan:

> The district court conducted a hearing in accordance with 18 U.S.C. § 3509(b)(1) and concluded for good reason that there was a substantial likelihood, established by expert testimony, that the child victim would suffer emotional trauma from testifying in court with the defendant present. In directing the taking of the testimony by means of two-way closed circuit television in compliance with 18 U.S.C. § 3509(b)(1)(B), the court alleviated some of the emotional trauma on the child. This both maximized the likelihood that the witness' recall and communication would be more accurate and preserved the defendant's right to confrontation. The court [also] instructed the jury that they were not to consider in any way or for any purpose the use of an alternate form of testimony.

Appellee's Brief at 16.

■ The Sixth Amendment's Confrontation Clause "guarantees the defendant a face-to-face meeting with witnesses appear-

---

1. Though Weekley also asserts that several government agents, apparently unaware of a sequestration order, were in the courtroom during defense counsel's argument at the suppression hearing, the burden is on a defendant asserting the violation of a sequestration order to demonstrate sufficient prejudice warranting reversal. *United States v. Lamp*, 779 F.2d 1088, 1094–95

(5th Cir.1986). Because the rule is designed to prevent the testimony of one witness from improperly influencing another witness' testimony, and because the prejudice in this case is slight given that the violation occurred after the agents had testified at the suppression hearing, we find that any error that occurred was harmless and did not prejudice Weekley's defense.

ing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016, 108 S.Ct. 2798, 2801, 101 L.Ed.2d 857 (1988). This right is not absolute, however, and must accommodate the state's "compelling" interest in "the protection of minor victims of sex crimes from further trauma and embarrassment." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248 (1982). Accordingly, "where necessary to protect a child witness from trauma that would be caused by testifying in the physical presence of the defendant, at least where such trauma would impair the child's ability to communicate, the Confrontation Clause does not prohibit use of a procedure [which] preserves the essence of effective confrontation," *Maryland v. Craig*, 497 U.S. 836, 857, 110 S.Ct. 3157, 3170, 111 L.Ed.2d 666 (1990), testimony by a competent witness, under oath, subject to contemporaneous cross-examination. *Id.* In fact, testimony by closed circuit television is a procedure now authorized by statute. *See* 18 U.S.C. § 3509(b).

■ Before invoking such a procedure, the district court must find that the child "would be traumatized, not by the courtroom generally, but by the presence of the defendant." *United States v. Rouse*, 111 F.3d 561, 568 (8th Cir.) (citations omitted), *cert. denied*, — U.S. —, 118 S.Ct. 261, — L.Ed.2d — (1997). Specifically, section 3509 provides:

(b) Alternatives to live in-court testimony.—

(1) Child's live testimony by 2–way closed circuit television.—

(A) In a proceeding involving an alleged offense against a child, the attorney for the Government, the child's attorney, or a guardian ad litem ... may apply for an order that the child's testimony be taken in a room outside the courtroom and be televised by 2–way closed circuit television....

(B) The court may order that the testimony of the child be taken by closed-circuit television as provided in subparagraph (A) if the court finds that the child is unable to testify in open court in the presence of the defendant, for any of the following reasons:

(i) The child is unable to testify because of fear.

(ii) There is a substantial likelihood, established by expert testimony, that the child would suffer emotional trauma from testifying.

. . . .

(C) The court shall support a ruling on the child's inability to testify with findings on the record....

18 U.S.C. § 3509. We review the factual findings of the district court for clear error. *Hernandez v. New York*, 500 U.S. 352, 369, 111 S.Ct. 1859, 1871–72, 114 L.Ed.2d 395 (1991).

The district court, after hearing expert testimony and talking with Adan *in camera*, concluded that Adan would be unable to testify in open court due to Weekley's presence. The record supports the district court's decision. Dr. DeYoung testified that Adan was fearful of Weekley and that he would be traumatized if he was required to testify in open court in Weekley's presence. Dr. DeYoung's opinion was made based on her meeting with Adan and his father, her familiarity with research studies in the area, and her years of experience as a clinical consultant to child sexual abuse treatment programs. The district court, after meeting with Adan *in camera*, agreed with Dr. DeYoung.

Though Weekley argues that the closed circuit testimony may have caused the jury to infer that Adan feared Weekley, the district court offered the following cautionary instruction to the jury prior to Adan's testimony: "The testimony of Adan Alvarado is going to be taken by two-way closed circuit television. The law allows for this type of testimony in a proceeding involving an alleged offense against a child. I am instructing you that the fact that the law allows testimony in this manner cannot be considered by you in any way. Do not even discuss it during your deliberations." A virtually identical instruction was read to the jury prior to deliberations. Because Weekley presented no evidence to refute Dr. DeYoung's testimony that Adan would suffer emotional trauma if he was required to testi-

fy in Weekley's presence, we find no clear error in the district court's decision to allow Adan to testify by two-way closed circuit television.

### U.S.S.G. § 2A3.1(b)(1)

 On appeal, Weekley asserts that he should not receive an adjustment under U.S.S.G. § 2A3.1(b)(1), because there is no proof that he used force or displayed a dangerous weapon during the commission of his crimes.

Section 2A3.1 ("Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse") provides for a base offense level of 27. In addition, section 2A3.1(b)(1) provides: "If the offense was committed by the means set forth in 18 U.S.C. § 2241(a) or (b) (including, but not limited to, the use or display of any dangerous weapon), increase by 4 levels." The Commentary following that section provides:

> The means set forth in 18 U.S.C. § 2241(a) or (b) are: by using force against the victim; by threatening or placing the victim in fear that any person will be subject to death, serious bodily injury, or kidnaping; by rendering the victim unconscious; or by administering by force or threat of force, or without the knowledge or permission of the victim, a drug, intoxicant, or other similar substance and thereby substantially impairing the ability of the victim to appraise or control conduct. This provision would apply, for example, where any dangerous weapon was used, brandished, or displayed to intimidate the victim.

U.S.S.G. § 2A3.1, comment. (n.2).

Though Weekley asserts that "[t]here was no evidence presented at any time that [he] used, brandished, or displayed any dangerous weapon to intimidate either of the boys," Appellant's Brief at 43, the district court found that section 2A3.1(b)(1) applied in this case because Weekley brandished a razor mounted on a make-shift handle during the commission of his crimes and, alternatively, because Weekley's conduct involved force and placed the victim in fear of serious bodily injury. Specifically, Adan was forced into a submissive position and molested repeatedly by a considerably larger adult who covered his eyes with cardboard and duct tape.

■ A force sufficient to sustain a conviction under 18 U.S.C. § 2241(a) includes "the use of such physical force as is sufficient to overcome, restrain or injure a person; or the use of a threat of harm sufficient to coerce or compel submission by the victim." *United States v. Fire Thunder*, 908 F.2d 272, 274 (8th Cir.1990) (citation omitted). The force requirement is satisfied if the "sexual contact resulted from a restraint upon the other person that was sufficient that the other person could not escape the sexual contact[.]" *United States v. Lauck*, 905 F.2d 15, 18 (2d Cir.1990). *See also United States v. Fulton*, 987 F.2d 631, 633 (9th Cir.1993) (the defendant's act of pushing down and holding the twelve-year-old victim in order to molest her constituted the use of force).

Moreover, Weekley brandished a razor mounted on a shaft. Because a razor mounted on a shaft must be considered a dangerous weapon pursuant to U.S.S.G. § 1B1.1, comment. (n.1), and because Adan was trying to protect his younger sibling who was also in Weekley's control, we affirm the district court's sentencing enhancement.

### III.

Accordingly, we **AFFIRM** Weekley's conviction and sentence.