Victor J. STEGALL, Plaintiff-Appellant,

v.

LITTLE JOHNSON ASSOCIATES, LTD., et al., Defendants-Appellees.

No. 92–1218.

United States Court of Appeals, Tenth Circuit.

June 21, 1993.

Kenneth E. Hitchen, St. Marys, OH (William J. McIlwain, Colorado Springs, CO, with him on the brief), for plaintiff-appellant.

James L. Merrill (Lynne A. Wilkins Dixon, with him on the brief), of James L. Merrill, Attorneys at Law, Colorado Springs, CO, for defendants-appellees.

Before BALDOCK, WOOD, Jr.,* and EBEL, Circuit Judges.

HARLINGTON WOOD, Jr., Senior Circuit Judge.

Plaintiffs sued Defendants for breach of contract and fraud concerning a real estate transaction. Following a bench trial, the district court entered judgment in favor of De-

---

* Honorable Harlington Wood, Jr., United States Senior Circuit Judge for the Seventh Circuit, sitting by designation.

fendants and dismissed the complaint. We affirm.

## I.

Thunderstorms may well be to blame for this litigation. In the middle of the summer of 1986 thunderstorms hit Colorado Springs. These storms caused significant flooding in some areas and prompted the local authorities to consider developing a master plan for drainage control. This proved to be unfortunate timing for Victor Stegall, an Ohio doctor who planned to erect a residential community on undeveloped land near Colorado Springs.

Stegall's medical practice has enabled him to invest in residential and commercial real estate throughout the United States. In 1985 Stegall became interested in adding to his holdings by developing an area in El Paso County, just outside the Colorado Springs municipal limits. Specifically, Stegall was considering undeveloped land near Bradley Road.

In August 1985 Stegall purchased an area south of Bradley Road called the Bradley Ranch ("Ranch") from Bradley Associates, a California limited partnership. Certain partners of Bradley Associates are also partners in Little Johnson Associates, Ltd. ("LJA"), defendants in this action. Along with Cletis Tuttle, a builder from Ohio, and with help from some of the defendants, Stegall successfully developed the Ranch in 1985 and 1986. The El Paso County Commissioners approved a final plat for the Ranch on September 4, 1986.

Encouraged by progress on the Ranch, Stegall and Tuttle began looking for additional land in the region to develop. After considering various properties, the two partners settled on a sixty-five acre area immediately north of the Ranch known as the Little Johnson Reservoir ("Reservoir"). On March 12, 1986, Stegall and Tuttle contracted with LJA to purchase the land. LJA was a California limited partnership formed specifically to acquire and sell the Reservoir. LJA's general partners were Charles Muckenthaller, Mike Dillon, Russell Rutherford, George Jury and Associates, Inc., and High Plains Developer, Inc., whose president was Bill Weber. Ruth-

erford was also the real estate broker for this deal.

The parties negotiated terms of the contract over a number of days. On the day the contract was to be signed the parties met at Rutherford's brokerage office. Before signing the contract, they bargained over final details. Rutherford took notes of these negotiations and the parties' agreements and using those notes typed the parties' terms onto a standard real estate contract form provided by the Colorado Board of Realtors. Three of those terms, relating to a drainage plan for the development, are at the core of this dispute.

In paragraph four of the form, which states "Price to include:", Rutherford typed in "Soil report—Master Drainage Plan—Survey·by a registered land surveyor." Under paragraph nineteen of the form, entitled "Additional provisions," Rutherford recorded:

"1. The Purchaser(s) shall have until April 15, 1986 to examine the property, review soil tests and master drainage plan and being satisfied with the availability of waste water capacity in Security Water and Sanitation District. If at that time Purchaser(s) determines that the property is not satisfactory, the Purchaser(s) may void the contract by giving written notice to the Seller(s), and all earnest money deposits shall be returned to the Purchaser(s) and all parties shall be released from all obligations hereunder.

. . . .

3. Purchaser(s) will be responsible for their share of the cost of construction of drainage facilities in a master drainage plan prepared by Wilson and Co. and accepted by El Paso County."

The contract called for Stegall and Tuttle to pay LJA $1,755,000 and to also assume an existing note and deed of trust in the amount of $840,000 payable to the Security Water District. August 20, 1986, was stipulated as the closing date but three additional agreements delayed the actual closing until December 29, 1986. The parties did not agree on two proposals Stegall introduced, one calling for the joint construction of a "detention pond as required by El Paso County" and

the other dealing with a postponement of the closing.

Immediately after signing the contract in March, LJA began the formal process of seeking county approval for development of the Reservoir. LJA hired Wilson and Company to serve as design engineer for a drainage study and grading plan for the area. The company put forward a proposal for its services on March 12, 1986. On April 4, 1986, Wilson and LJA signed a contract that incorporated the company's March proposal. Two weeks later Wilson completed its "preliminary drainage study" and submitted it for review to the El Paso County Department of Transportation on April 18, 1986.

Wilson's plan was fairly simple; it suggested draining storm water from the area north of Bradley Road into a proposed detention pond just south of Bradley Road. Wilson estimated its drainage proposal would cost approximately $231,000. An engineer with the Department of Transportation reviewed Wilson's plan and returned it on May 9, 1986, with his comments. The engineer's remarks were technical and did not suggest the plan was unacceptable. Wilson incorporated the comments into a revised preliminary drainage study.

Tuttle hired Land Development Consultants, Inc. to represent Plaintiffs in zoning matters before the county and to generate and oversee a development plan. Pursuant to this contract, on September 18, 1986, Land Development Consultants filed a sketch plan for the Reservoir with the El Paso County Planning Commission for review and comment by all interested parties and agencies. The plan included the Wilson and Company's preliminary drainage study.

On November 18, 1986, the planning commission approved the sketch plan. A week later Rick O'Connor, a senior planner with El Paso County, wrote to Land Development Consultants advising the company it and Stegall would need to make some changes in the sketch plan before the county commissioners could consider it. None of the changes referred to the drainage plan. On December 29, 1986, Stegall, Tuttle, and Little Johnson Associates closed on their land sale contract.

Three weeks later the trouble began. On January 23, 1987, the head of the El Paso County Department of Transportation, Max Rothschild, met with Tuttle, representatives from the Wilson Company and Land Development Consultants, and with Norton Frank, a real estate broker from Ohio sent to represent Stegall. At the meeting Rothschild expressed concern about the drainage plan for the Reservoir development. Flooding caused by the thunderstorms of the preceding summer had convinced Rothschild that a broad master drainage plan was needed for the basin in which the Reservoir lay before the Reservoir could be developed.

Nevertheless, the El Paso County Commissioners approved the sketch plan for the Reservoir on January 29, 1987. Approval came after much discussion about the need for a master drainage plan. A few days later O'Connor again wrote to Land Development Consultants. The county's planner highlighted the commissioners' concern with drainage in the basin. Land Development Consultants then filed a preliminary plat and zoning report with the county on April 3, 1987. The county, in turn, sought comment from interested parties. Comment came from the Department of Transportation which specifically rejected the preliminary plat until a comprehensive master study for the basin could be completed.

Simons, Li and Associates, Inc. began the master study for the county on May 7, 1987. On November 12, 1987, the El Paso County Commissioners considered Stegall's petition for rezoning and preliminary plat. The commissioners approved the rezoning and plat but deferred final approval until completion of the master study. In April 1988 Simons, Li and Associates completed its study. The master plan called for water from the Reservoir and the surrounding basin to be drained west approximately one mile. The plan specifically ruled out Wilson's proposal to drain water into a detention pond south of Bradley Road.

The total cost of draining the basin pursuant to the master plan's scheme would be $7,883,256. Although Stegall would not be responsible for the entire bill, the master plan sharply raised the cost per acre of de-

veloping the Reservoir. Stegall elected not to continue development of the Reservoir and defaulted on his note to the Security Water District. The district then foreclosed on the property.

## II.

On December 29, 1988, Stegall filed a complaint against Defendants in district court, basing jurisdiction on 28 U.S.C. § 1332. As presented to the court on March 30, 1992, Stegall alleged that under Colorado law Defendants had breached their contractual obligation to provide him with a master drainage plan accepted by El Paso County and had committed fraud by not revealing that a master drainage plan had not been prepared and accepted by the county.

Stegall asserted that under the contract LJA was required to provide him with a comprehensive drainage plan comparable to the one Simons, Li and Associates prepared for the county in 1988. Defendants argued the contract was ambiguous, Stegall knew he was not getting a comprehensive drainage plan, they worked with the Stegall in the good faith belief the Wilson plan would satisfy the county commissioners, and that Stegall waived any claims to a comprehensive drainage plan by virtue of paragraph 19(1), which gave him a one-month inspection period after signing the contract.

Following a four-day bench trial, the district court, on June 17, 1992, ordered judgment be entered in favor of Defendants. Discussing the breach of contract claim, the court found as a matter of law that the contract was ambiguous when it referred to a "master drainage plan." Noting the extensive bargaining over contract terms, the court also found the Defendants had not drafted the contract. The ·court therefore did not construe the ambiguity against Defendants.

Based upon the evidence presented, the court found the parties' use of "master drainage plan" did not mean a basin-wide study but rather a site-specific study similar to the one Defendants in fact provided. The court noted Stegall had participated in development around Bradley Road and was fully aware of the county's policy of permitting development in an unstudied area on an ad hoc basis. Furthermore, the court observed Stegall had a full opportunity under paragraph 19(1) to examine the Defendants' drainage plan and to decide whether it would be acceptable to him and the county. Finally, the court found the Defendants had produced a drainage plan acceptable to the county. Wilson and Company prepared a drainage plan, filed it for review with the county planning commission, and the commission made only technical comments. The court found no breach of contract.

The court also rejected Stegall's claim that Defendants committed fraud by falsely representing the Wilson plan was acceptable to the county or by failing to reveal to him that the county would condition development of the Reservoir on a comprehensive drainage study. The county only required a comprehensive drainage plan after the 1986 thunderstorms caused significant flooding on Bradley Road—flooding that occurred after the signing of the contract. Defendants did not, the court found, conceal any facts from Stegall. In addition, the platting, rezoning and approval process was open and available to Stegall for his inspection.

## III.

On appeal, Plaintiff argues· the district court based its opinion on six clearly erroneous findings of fact. Those alleged errors are (1) finding LJA sought county approval for development of the Reservoir only after signing the contract on March 12, 1986, (2) finding Wilson Company rejected a drainage plan similar to the one the county eventually adopted as being too expensive after discussion with Tuttle and Stegall, (3) finding Stegall contended he was to be provided with a comprehensive plan such as the Simons, Li and Associates plan, (4) finding the term "Master Drainage Plan" as used in· the contract to be ambiguous, (5) finding Rutherford did not unilaterally draft the March 12, 1986, contract, and (6) finding Defendants contracted only to provide a drainage plan acceptable to the county, rather than one actually accepted by the county.

We review a district court's factual findings under the "clearly erroneous" standard of Federal Rule of Civil Procedure 52(a). *Chaparral Resources, Inc. v. Monsanto Co.*, 849 F.2d 1286, 1289 (10th Cir. 1988). This means a finding of fact shall stand unless our review of the entire evidence leaves us "with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (citation omitted). In our review we "give great deference to the factual determinations of the original finder of fact, who has the exclusive ability to assess the demeanor and the tone of the witnesses' testimony." *Thompson v. Rockwell Int'l Corp.*, 811 F.2d 1345, 1350 (10th Cir.1987).

The clearly erroneous standard, though, does not apply to all of the district court's alleged errors. The determination whether a contract is ambiguous is a question of law. *Teton Exploration Drilling, Inc. v. Bokum Resources Corp.*, 818 F.2d 1521, 1526 (10th Cir.1987); *Metropolitan Paving Co. v. City of Aurora*, 449 F.2d 177, 181 (10th Cir.1971); *In re Marriage of Anderson*, 711 P.2d 699, 701 (Colo.Ct.App.1985). If the court determines a contract is ambiguous and its construction depends on ·extrinsic evidence, then interpretation of the contract becomes a question of fact. *City of Farmington v. Amoco Gas Co.*, 777 F.2d 554, 560 (10th Cir.1985); *Palipchak v. Kent Constr. Co.*, 38 Colo.App. 146, 554 P.2d 718, 719 (1976). While we give deference to a district court's determination of fact, we review its determination of law de novo. *In re Tri-State Equip., Inc.*, 792 F.2d 967, 970 (10th Cir.1986); *Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371, 374 (Colo.1990).

With these standards of review in mind, we turn to Plaintiff's allegations of error. First on the list is his contention that the district court erred by finding LJA sought county approval for development of the Reservoir after signing the contract on March 12, 1986. Plaintiff cites evidence purporting to show that Defendants commenced the platting process for the Reservoir and knew a master drainage plan for the entire basin would probably be required prior to signing the contract.

Essentially, Plaintiff argues the evidence supports his allegation that Defendants committed fraud. After reviewing the record, we cannot say the district court clearly erred. Plaintiff's evidence fails to clearly show Defendants knew a master drainage plan for the entire basin would be required prior to the contract. Having developed land in that area previously, Plaintiff and Defendants knew the county permitted ad hoc development without insisting on a master drainage plan. In relation to the timing of Defendants' planning efforts, Plaintiff glosses over the fact that Defendants did not own the Reservoir area until February 1986, one month before the signing of the contract. While some of the Defendants may have made tentative plans to develop the area, we fail to see how that is relevant.

Plaintiff also neglects to explain to us the importance of the district court's second "error," its statement that Wilson and Company rejected a drainage plan similar to the one the county eventually adopted after discussion with Tuttle and Stegall. Even if we assume the district court's finding was erroneous we are not shown how such an error would affect either the fraud or breach of contract claims. Similarly, we are left in doubt by Plaintiff's third allegation of error. Plaintiff does not demonstrate the significance of the district court's summation of Stegall's argument before that court. Moreover, after reviewing Plaintiff's complaint, we feel the court correctly summarized Stegall's argument.

The remaining allegations deal ·with the breach of contract claim. Plaintiff states, without elaboration, that the district court erred by finding the contract ambiguous when it referred to a "master drainage plan." Under Colorado law, to determine if a particular term is ambiguous, "the language of the agreement must be construed by application of the accepted meaning of the words with reference to all its provisions. The nature of the transaction which forms the contract subject matter must also be considered." *In re Marriage of Thomason*, 802 P.2d 1189, 1190 (Colo.Ct.App.1990); *accord Radiology Pro-*

*fessional Corp. v. Trinidad Area Health Ass'n,* 195 Colo. 253, 577 P.2d 748 (1978); *Christmas v. Cooley,* 158 Colo. 297, 406 P.2d 333, 335 (1965).

■ We agree with the district court that under this standard the term "master drainage plan" is ambiguous. The contract places no geographical limit on the scope of the drainage plan; only by looking at the evidence offered by both Plaintiff and Defendants could the court fulfill its duty to "ascertain and effectuate the intent of the parties." *National Sales Corp. v. Dennis,* 93 Colo. 536, 27 P.2d 499, 500 (1933). The Plaintiff, in fact, admits the district court correctly interpreted the term. In his brief, Plaintiff states that the contract term "master drainage plan" means "a 'master drainage plan' such as the one prepared by Wilson & Co.," i.e. a study only of the Reservoir and not of the entire basin. Appellant's Br. at 33.

■ Plaintiff's fifth allegation of error concerns the district court's finding that Rutherford, one of the Defendants, did not unilaterally draft the final contract. This point is important in that ambiguities in a contract are to be construed against the drafter. *Omnibank Parker Rd. v. Employers Ins.,* 961 F.2d 1521, 1523 (10th Cir.1992); *United States Fidelity & Guar. Co. v. Budget Rent–A–Car Sys., Inc.,* 842 P.2d 208, 210 (Colo.1992); *Kuta v. Joint Dist. No. 50(J),* 799 P.2d 379, 382 (Colo.1990). *But see Quad Constr., Inc. v. Wm. A. Smith Contracting Co.,* 534 F.2d 1391 (10th Cir.1976) (words construed against drafter only as last resort).

Stegall does not, however, introduce any authority that would support the construction of ambiguities against one party when the contract was extensively negotiated by two parties on equal footing. *Cf. Eley v. Boeing Co.,* 945 F.2d 276, 280 (9th Cir.1991) (Rule of contra proferentem is not automatically applied to contracts resulting from arms-length bargaining by parties of equal power); *Homac, Inc. v. DSA Fin. Corp.,* 661 F.Supp. 776, 788 (E.D.Mich.1987) (rule not used where agreement resulted from series of negotiations between experienced draftsmen); *International Wood Processors v. Power Dry, Inc.,* 593 F.Supp. 710, 734 (D.S.C.1984) (rule inapposite where there is no evidence of adhesion or unequal bargaining). In any event, our review of the record supports the district court's finding that the disputed terms of the contract were negotiated by both parties and not unilaterally scripted by Defendants.

■ Finally, we come to Plaintiff's argument that the district court was clearly erroneous when it found the parties had contracted only to provide a drainage plan acceptable to the county, rather than one actually accepted by the county. The district court observed that Stegall was familiar with developing land in El Paso County and had a full opportunity to examine the property, review the master drainage plan, and discuss the status of the development with the county officials. Additionally, the county approved plans for the Reservoir which incorporated the Wilson and Company proposal at several stages of the platting process. After considering the ambiguous contract terms and the facts and circumstances surrounding the transaction, the district court found no breach of contract. We cannot say the court clearly erred.

### IV.

For the foregoing reasons we affirm the district court's judgment.

**AFFIRMED.**