UNITED STATES of America,
Plaintiff–Appellee,

v.

Norcees Ben CARRIER, Defendant–Appellant.

No. 92–8058.

United States Court of Appeals,
Tenth Circuit.

Nov. 3, 1993.

Rehearing Denied Dec. 21, 1993.

Richard A. Stacy, U.S. Atty. (Aleksander D. Radich, Asst. U.S. Atty., and Lou Piccioni, Law Clerk, with him on the brief), D. Wyo., Cheyenne, WY, for plaintiff-appellee.

Michael R. O'Donnell, Asst. Federal Defender (Michael G. Katz, Federal Public Defender, Denver, CO, with him on the brief), Cheyenne, WY, for defendant-appellant.

Before SEYMOUR, ANDERSON, and EBEL, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. This cause is therefore ordered submitted without oral argument.

Norcees Ben Carrier appeals the district court's order allowing testimony by closed circuit television for two child witnesses in his trial on sexual abuse charges. He contends that the district court did not make the findings necessary to authorize televised testimony under 18 U.S.C. § 3509(b)(1)(B). He further contends that, even if the statute was satisfied, the findings were constitutionally inadequate under *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## BACKGROUND

During a one-year period in 1990–91, three young girls came forward individually with allegations that Mr. Carrier had sexually abused them. The alleged incidents took place in 1988 and 1989, when the girls were approximately sixteen, eight, and seven years old, respectively. Mr. Carrier was thereafter indicted on multiple charges of sexual abuse in violation of 18 U.S.C. §§ 2241(c), 2244(a)(1), 2244(b).

The government brought a pretrial motion seeking an alternative to in-court testimony, such as testimony by closed circuit television, for the two younger girls.[1] Two weeks before trial the district court held an evidentiary hearing on the motion. The court heard testimony from a licensed child counselor, Martha P. Clarke, and a victim's advocate for the Native American Outreach Project, Irene Martinez, both of whom had spent many hours with the two children since the allega-

---

1. By this time, the oldest girl had reached the age of 18 and thus did not qualify for special protection under 18 U.S.C. § 3509.

tions of abuse were made. Additionally, the district court judge visited personally with the two children in an informal meeting in chambers in the presence of defense counsel, government counsel, the guardian ad litem, Ms. Martinez, and a court reporter, who recorded the meeting.

At the end of the hearing the district court found that the children would be unable to testify in the courtroom because of their fear of Mr. Carrier's presence. R.Vol. III, at 146–47. Thus, the court granted the motion and ordered that the children could testify at trial by two-way, closed circuit television, pursuant to 18 U.S.C. § 3509(b)(1)(B). *Id.* at 145–46.

During the trial, the children testified from a room adjacent to the courtroom. Their testimony was transmitted by closed circuit television into the courtroom for viewing and hearing by the defendant, judge, and jury. Live images of the defendant and jury were transmitted into the room in which the children testified. Counsel for the government and defense were in the room with the children during direct and cross-examination and were able to communicate contemporaneously with the judge in the courtroom for rulings on objections. The jury convicted Mr. Carrier on six of seven counts, and he was sentenced to 190 months, a consecutive sentence of 6 months, plus five years of supervised release. He now appeals.

## DISCUSSION

### I.

The Supreme Court has upheld the constitutionality of closed circuit trial testimony by witnesses alleged to be the victims of child abuse, but only upon a case-specific, "adequate showing of necessity." *Maryland v. Craig*, 497 U.S. 836, 855, 110 S.Ct. 3157, 3169, 111 L.Ed.2d 666 (1990). The Court in

*Craig* identified several findings that a trial court must make before denying the defendant's right to face-to-face confrontation with the child witness:

[T]he trial court must hear evidence and determine whether ... the ... procedure is necessary to protect the welfare of the particular child who seeks to testify. The trial court must also find the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant.... Finally, the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimis,* *i.e.,* more than "mere nervousness or excitement or some reluctance to testify."

*Id.* at 855–56, 110 S.Ct. at 3169 (citations omitted); *cf. Idaho v. Wright,* 497 U.S. 805, 819, 110 S.Ct. 3139, 3148, 111 L.Ed.2d 638 (1990) (before admitting at trial out-of-court statements by a child declarant to an examining pediatrician, Confrontation Clause requires trial court to find that the statements have "particularized guarantees of trustworthiness," shown from the totality of the circumstances surrounding the making of the statements). The Court in *Craig* did not decide the minimum showing of emotional trauma required, but noted that this requirement is satisfied "at least" by a showing that "such trauma would impair the child's ability to communicate." *Id.,* 497 U.S. at 857, 110 S.Ct. at 3170.[2]

Following *Craig,* Congress passed 18 U.S.C. § 3509, which authorizes federal courts to order two-way closed circuit testimony in child abuse cases "if the court finds that the child is unable to testify in open court in the presence of the defendant, for any of the following reasons:

(i) The child is unable to testify because of fear.

---

**2.** It is an open question whether *Craig*'s "more than *de minimis* trauma" finding can be made solely upon a showing that the child would suffer severe or permanent trauma from testifying in the defendant's presence, without a showing that the child would be unable to communicate. *See Thomas v. Gunter,* 962 F.2d 1477, 1482 n. 6 (10th Cir.1992) (leaves question open because trial court's findings appeared to consider both aspects); *Thomas v. People,* 803 P.2d 144, 150 n.

13 (Colo.1990) (notes ambiguity, but suggests that *Craig*'s holding would apply even where serious trauma suffered by child would not impair child's ability to communicate); Jean Montoya, *On Truth and Shielding in Child Abuse Trials,* 43 Hastings L.J. 1259, 1271–73 (1992) (discusses practical problem of believing expert who says that defendant's presence severely traumatizes child where child is still capable of testifying accurately in defendant's presence).

(ii) There is a substantial likelihood, established by expert testimony, that the child would suffer emotional trauma from testifying.

. . . . .

18 U.S.C. § 3509(b)(1)(B)(i–ii).[3] The court must support its ruling on the child's inability to testify with findings on the record. § 3509(b)(1)(C).

Mr. Carrier suggests that the § 3509(b)(1)(B) requirements, even if met, are insufficient to satisfy the constitutional parameters established in *Craig.* He contends, for example, that while § 3509(b)(1)(B)(i) seems satisfied by a finding that a child is unable to testify in the presence of the defendant "because of fear," *Craig* requires, more specifically, a district court to find that such "fear" would be caused *by the presence of the defendant,* not just the courtroom (in which the defendant would be present) generally. *Craig,* 497 U.S. at 856, 110 S.Ct. at 3169 (otherwise, testimony could be taken in another less-threatening location with the defendant present); *United States v. Farley,* 992 F.2d 1122, 1125 (10th Cir.1993).[4]

■ We need not decide whether the findings required by § 3509(b)(1)(B), properly construed, fall short of the constitutional lines drawn in *Craig,* because the district court's findings in this case satisfy both the statute and *Craig.* *Cf. United States v. Garcia,* 7 F.3d 885, 888 (9th Cir.1993) (holding that "the language in the Child Victims' and Child Witnesses Rights statute [18 U.S.C. § 3509] is consistent with the standard approved in *Craig.*").

### II.

■ Mr. Carrier contends that the district court erred in granting the motion for closed circuit testimony because it failed to make the findings required by *Craig* to protect his right to face-to-face confrontation with adverse witnesses. We review the fac-

tual findings of the district court for clear error. *Hernandez v. New York,* 500 U.S. 352, ——, 111 S.Ct. 1859, 1869, 114 L.Ed.2d 395 (1991). We review *de novo* the legal effect of those findings under § 3509(b)(1)(B) and *Craig.* *Thomas v. Gunter,* 962 F.2d 1477, 1481 (10th Cir.1992).

■ The district court heard case-specific evidence on the question of whether closed circuit testimony was necessary for the two child witnesses and issued these findings:

From observing the girls and hearing the testimony of Ms. Clarke, I do not believe that the children would be able to testify in the courtroom. And I say that because I believe the record is replete with testimony ... from Ms. Clarke and Ms. Martinez, of the fear of the physical confrontation with the [defendant], being in the [defendant]'s physical presence....

So I think there is ample record to demonstrate in the testimony two to three times greater fear made by the physical confrontation with the [defendant] in the courtroom.... I feel also that there is, as Ms. Clarke testified, substantial likelihood of emotional trauma, which she characterized as severe, that would result....

R.Vol. III, at 146–47.

The record supports these findings. Ms. Clarke, a licensed counselor, testified that the presence of Mr. Carrier in the courtroom was the children's primary source of fear, and that, in her opinion, his presence would cause them "severe" distress. R.Vol. III, at 23, 86, 88. She also testified that Mr. Carrier's presence would, in her opinion, cause the children to be unable to testify accurately. *Id.* at 34. Her opinions were based on numerous counseling sessions with the children, their statements to her concerning Mr. Carrier, their frequent nightmares concerning testifying in Mr. Carrier's presence, and her knowledge of their Native American tribe's culture, in which glaring or staring at one by another is considered especially intimidating. *Id.* at 12, 14–22. Because there is factual

---

**3.** Subsections (iii) and (iv) of § 3509(b)(1)(B) are not at issue in this case, as the district court's findings were not based on either subsection.

**4.** A similar argument could be made under subsection (ii), that a district court's finding that "[t]here is a substantial likelihood, established by

expert testimony, that the child would suffer emotional trauma from testifying" fails under *Craig* unless the predicted "trauma" would be caused *by the presence of the defendant,* rather than the courtroom generally. *Craig,* 497 U.S. at 856, 110 S.Ct. at 3169.

support in the record for the district court's findings, and upon reviewing the record we are not left with a firm conviction that a mistake has been made, we hold that the court's findings were not clearly erroneous. *See Stegall v. Little Johnson Assocs.*, 996 F.2d 1043, 1048 (10th Cir.1993).

■ Further, we uphold the district court's decision to order closed circuit testimony based on these findings. We hold that these findings satisfied § 3509(b)(1)(B) and the constitutional requirements of *Craig.* Together, the statute and *Craig* require a case-specific finding that closed circuit testimony is necessary for a child because the child would suffer more than *de minimis* fear or trauma, and in fact would be unable to testify because of such fear or trauma, brought on by the physical presence of the defendant. The district court's findings satisfy each requirement.

Mr. Carrier contends that the district court failed to distinguish between the inability of the girls to communicate in general and their inability to testify in his presence. This is an important distinction under *Craig*, but we think the court made this distinction in saying: "I do not believe that the children would be able to testify in the courtroom. And I say that *because* ... of the fear of the physical confrontation with the [defendant]." R.Vol. III, at 146.

Mr. Carrier's argument is based on later statements of the district court. In further explaining its ruling granting the motion for closed circuit testimony, the court discussed the children's general unwillingness to communicate, saying:

And I can see how the children reacted to our presence in a nonthreatening environment, which even then is very subdued and seemed to me not a very successful interview.... To me, neither had the confidence of a lot of other children ... both exceedingly shy and very much showing that shyness ... [T]he problem is getting the children to testify at all, even in this special setting.... It's obvious to me that these children will have difficulty in staying on task in terms of reciting a narration of events.

So I find there is, *for all of those reasons,* an inability, in my view, of the chil-

dren to testify. And I find, I guess, these findings by a preponderance of the evidence.... I think the two-way closed circuit TV is one means of addressing the problem ... I'm not sure it's going to solve the problem, frankly.

R.Vol. III, at 147–49 (emphasis added).

We are satisfied that the district court understood and correctly applied the statutory and constitutional standards in this case. The district court's statements made in granting the motion for closed circuit testimony, read as a whole, reflect its understanding of what it was required to find. We do not infer from statements out of context that the court misunderstood the law. The court made the required findings, and its findings are supported by the record. We therefore AFFIRM the decision to use closed circuit testimony for the two child witnesses in this case, and AFFIRM Mr. Carrier's conviction.