**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 23 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

PAUL J. GRANT, M.D.; BRUCE G.
KLAAS, ESQ.; GUINTER KAHN,
M.D.,

     Plaintiffs - Appellants,

and

GLEN KAHN, Liquidating Trustee for
Minoxidil Royalty Partners, a
Massachusetts General Partnership,

     Plaintiff - Intervenor,

v.

PHARMACIA & UPJOHN
COMPANY, formerly known as The
Upjohn Company, a Delaware
corporation,

     Defendant - Appellee.

and

BRUCE G. KLAAS, ESQ.,

     Defendant - Intervenor.

No. 01-1509

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 99-N-285)

Brett Marshall Godfrey (William L. Burk, with him on the briefs), Godfrey & Lapuyade, P.C., Englewood, Colorado, for Plaintiffs - Appellants.

Stephen E. Scheve (William P. Jensen and Manuel Lopez, Shook, Hardy & Bacon, L.L.P., Houston, Texas and Ty Cobb and David L. London, Hogan & Hartson, L.L.P., Denver, Colorado, with him on the brief), for Defendant - Appellee.

Before **KELLY**, **McKAY**, and **HARTZ**, Circuit Judges.

**KELLY**, Circuit Judge.

In this diversity case, Plaintiffs-Appellants, Drs. Grant and Kahn and their former lawyer, Bruce G. Klaas, Esq.[1], appeal from the district court's grant of summary judgment in favor of Defendant-Appellee Pharmacia & Upjohn Co. ("Upjohn") on a claim for royalty payments under a contract regarding a pharmaceutical patent. Our jurisdiction arises under 28 U.S.C. § 1291. Finding that the contract does not provide for royalty payments beyond expiration of the patent or, alternatively, that any ambiguity in the contract is properly resolved in Defendant Upjohn's favor, we affirm.

---

[1] Mr. Klaas represented Drs. Grant and Kahn before the Patent and Trademark Office ('PTO") and receives 40% of any payments made by Upjohn to the doctors.

Background

This dispute arises from a contract between two dermatologists at the University of Colorado (Drs. Grant and Kahn) and Upjohn that terminated an interference proceeding by the Patent Office. The doctors were partly responsible for the discovery that minoxidil (marketed by Upjohn as Rogaine) stimulates hair growth. Both Upjohn (in 1971, the "'619 Patent") and Drs. Grant and Kahn (in 1974, the "'812 Patent") filed patent applications for the topical use of minoxidil to stimulate hair growth, and the Patent Office granted Upjohn's application.

In order to resolve a pending interference proceeding by the Patent Office (to resolve the competing claims among the patent holders), the parties entered into an Interference Settlement Agreement ("ISA"), the terms of which are the basis of this litigation. In relevant part, the ISA provides:

> UPJOHN further agrees to pay an earned royalty of three and three-quarter percent (3-3/4%) of UPJOHN's NET SALES of the INVENTION where the sale of the INVENTION would infringe any claim of the PATENT or the APPLICATION or any subsequently issued patent in which UPJOHN was assigned or could have been assigned an interest pursuant to this Agreement, with a guaranteed minimum annual royalty of one hundred thousand dollars ($100,000) per year for the first six calendar years after the year in which commercialization commences. UPJOHN also agrees to pay an earned royalty of two percent (2%) of UPJOHN'S NET SALES of the INVENTION where the manufacture of the INVENTION would infringe but the sale of the INVENTION would not infringe any claim of the PATENT or the APPLICATION or any subsequently issued patent in

which UPJOHN was assigned or could have been assigned an interest pursuant to this Agreement.

Aplt. App. at 55, ¶ 7.

Following FDA approval of minoxidil for topical use to stimulate hair growth in 1988, Upjohn began manufacture and sale of the product. Drs. Grant and Kahn received in excess of $26 million in royalties under the ISA. On February 13, 1996 (the day Upjohn's patent on minoxidil expired), Upjohn ceased royalty payments. Plaintiffs filed suit on February 12, 1999, essentially alleging that Upjohn had breached the ISA by not paying royalties.

The parties filed cross-motions for summary judgment. According to the Plaintiffs, Upjohn's obligation to pay royalties (a) extended for three additional years, the duration of Upjohn's exclusivity period under the Drug Price Competition and Patent Term Restoration Act (the "Hatch-Waxman Act"), or (b) extends as long as Upjohn manufactures and/or sells minoxidil. Upjohn argued in reply that the contract could not plausibly be interpreted to require royalty payments beyond 1996 and, in the alternative, that the Supreme Court's ruling in Brulotte v. Thys Co., 379 U.S. 29 (1964), forbids the extraction of royalties on a patent beyond the patent's expiration.

The district court held that the terms of the ISA were ambiguous, but the undisputed facts in the case (to which the parties stipulated) led the court to conclude that the contract should be interpreted in accord with Upjohn's view

that its obligation to pay royalties ended with the expiration of the patent(s).  On appeal, Plaintiffs raise essentially two issues: (1) The unambiguous language of the ISA entitles the Plaintiffs to royalty payments "for as long as [commercial sales of Rogaine] continue," Aplt. Br. at 20, and (2) Plaintiffs were entitled to payment of royalties beyond 1996 either because Upjohn's terminally disclaimed patent did not expire until June 24, 2003, Aplt. Br. at 45, or because the provisions of the Hatch-Waxman Act extended the term of Plaintiffs' patent for three additional years, Aplt. Br. at 50.

Discussion

In this diversity case, we apply Colorado contract law and review the district court's decision de novo.  Salve Regina College v. Russell, 499 U.S. 225, 238-39 (1991).  The interpretation of a contract under Colorado law is a legal question.  Fibreglas Fabricators, Inc. v. Kylberg, 799 P.2d 371, 374 (Colo. 1990); Holland v. Bd. of County Comm'rs, 883 P.2d 500, 505 (Colo. Ct. App. 1994). Whether a contractual term is ambiguous is also a question of law. Pepcol Mfg. Co. v. Denver Union Corp., 687 P.2d 1310, 1314 (Colo. 1984); Fibreglas Fabricators, 799 P.2d at 374.  If a contract is ambiguous and allows the introduction of external evidence to determine the contract's construction, "then interpretation of the contract becomes a question of fact."  Stegall v. Little

Johnson Assocs., Ltd., 996 F.2d 1043, 1048 (10th Cir. 1993).

In this case, the parties stipulated to a set of facts, which allowed the district court to grant summary judgment despite the court's conclusion that the ISA at issue in the litigation was ambiguous. The district court's apparent view that the ISA is ambiguous is not entirely clear. See Aplee. Br. at 15 ("[T]he District Court appears to treat Paragraph 7 of the ISA as ambiguous."). Part of Upjohn's argument on appeal, as well as the district court's memorandum of decision, seems to suggest not that the ISA is ambiguous but that the terms of the contract unambiguously provide for royalty payments only for the duration of Upjohn's patent(s). We conclude that the terms of the ISA unambiguously provide for royalties to terminate in 1996, but–even if the terms of the ISA are ambiguous–the undisputed facts establish that contract was intended to provide for royalty payments only until the expiration of the patent(s) on minoxidil.

Plaintiffs argue that the ISA unambiguously provides for the payment of royalties to them by Upjohn for an indefinite period. The basis for the argument that the ISA provides for payment of royalties indefinitely is that the six-year minimum term for royalty payments (at $100,000 per year) evinces the parties' intent not to tie Upjohn's payment obligations to the statutory period of Upjohn's patent. Plaintiffs might have an argument for payment of royalties beyond the patent expiration date had, for example, the FDA not approved

minoxidil for commercial sale until 1992. In that case, the patent would have expired only four years later, and Plaintiffs could have claimed a baseline entitlement of $600,000 under the contract, which "guaranteed [a] minimum annual royalty of one hundred thousand dollars ($100,000) per year for the first six calendar years after the year in which commercialization commences." Aplt. App. at 55, ¶7. That problem is mooted here, of course, since the FDA's approval in 1988 left eight years before the expiration of Upjohn's patent. What the Plaintiffs <u>cannot</u> plausibly claim is that the baseline entitlement to $600,000 over the first six years of commercialization vitiates the language in the contract tying royalty payments to sales "where the sale of the INVENTION would infringe any claim of the PATENT or the APPLICATION." <u>Id</u>.

The argument that one clause of the contract (providing for the guaranteed $600,000 regardless of the timing of FDA approval) renders ineffective another clause (tying royalty payments to patent infringement) cannot be sustained. We reject as simply implausible the Plaintiffs' contention–raised repeatedly at oral argument–that the words "where" and "would infringe" in the operative language of the ISA are meant to serve as a "time-independent" geographic limitation. Aplt. Br. at 31. Indeed, the Oxford English Dictionary notes that the usage of "where" in legal documents generally denotes "[i]t being the case that; in view of the fact that; forasmuch as, inasmuch as," which is precisely the

meaning of "where" in the ISA. Oxford English Dictionary (2d ed.1989).

Even if we were to find that the provisions governing royalty payments under the ISA were ambiguous (finding, for example, the provisions for a six-year guarantee and the "where the sale of the INVENTION would infringe," Aplt. App. at 55, ¶7) language to be in tension with each other), the same result would be reached. Most persuasive in this regard is the evidence of the parties' conduct prior to litigation, including statements or conduct by the Plaintiffs tending to show that they knew royalties would cease in 1996. See Gregg v. Am. Quasar Petroleum Co., 840 F. Supp. 1394, 1397 (D. Colo. 1991) ("[T]he intention of the parties and their interpretation of their contract before a controversy arises is one of the best indications of their true intent."). In a deposition taken during litigation brought by his ex-wife, Dr. Grant testified that his understanding was that Upjohn's royalty payments would cease in 1996:

> Q:  What is the term of the agreement?
> A:  The royalties go for as long as the patent coverage of Minoxodil lasts.
> Q:  How long is that?
> A:  1996.
> Q:  Is there any provision for compensation, however denominated, after 1996?
> A:  No.

Aplee. Supp. App. at 47. Similarly, in a document detailing the financial plans for Dr. Grant's charitable foundation, Bread of Life Foundation, and submitted in Dr. Grant's name, he admitted that "[a]nticipated future donations from the

assignment of 10% of the earned royalties from the gross sales of Rogaine by Paul Grant, M.D., should be about $100,000 a year through 1996 when the royalties cease." Aplee. Supp. App. at 259. Plaintiffs may be correct that "[t]he mechanics of paying spousal maintenance and funding a charitable foundation both necessitate conservative fiscal views," Aplt. R. Br. at 7 n.6, but these admissions go beyond Dr. Grant's fiscal views to unambiguous admissions regarding the operative terms of the ISA.

The absence of any terms in the ISA (other than, on Plaintiffs' view, the six-year guarantee) for royalty payments "in perpetuity" is telling. Instead, the ISA, viewed most favorably to Plaintiffs, provided Drs. Grant and Kahn a guaranteed $600,000 payment and tied royalties over and above that amount to the expiration of Upjohn's patent(s) on minoxidil. FDA approval in 1988 afforded the Plaintiffs eight years of royalty payments, but both their own conduct, supplemented by the plain terms of the ISA, lead to the view that Upjohn's obligation to pay royalties ended in 1996.

In the alternative, Plaintiffs argue that they are entitled to royalties from the sale of minoxidil until June 24, 2003, "which is the date on which Upjohn's subsequently issued patent would have expired." Aplt. Br. at 45. Plaintiffs' argument rests on the view that if Drs. Kahn and Grant's originally filed patent application had been approved by the PTO (which it was not) and remained in

force (which it could not have, since it was terminally disclaimed by Upjohn), then it would not have expired until 2003. According to Plaintiffs, Upjohn's decision to terminally disclaim the '812 Patent caused a premature expiration of the patent on minoxidil and deprived Plaintiffs of seven additional years' worth of royalties.

We reject this argument for two reasons. First, as stated above, our interpretation of the terms of the ISA leads us to conclude that the contract provided for royalty payments until the expiration of any and all of Upjohn's patents on minoxidil. The provision in the ISA for "any subsequently issued patent" covers the parties' obligations as regards the '812 Patent. Both the '619 Patent (Upjohn's original patent) and the '812 Patent (the application by Drs. Kahn and Grant) expired on February 13, 1996.

Second, even if we were somehow to conclude that the '812 Patent was in force until 2003, the district court was correct to conclude that Colorado's statute of limitations bars the Plaintiffs' action. Colorado law provides that contract actions and actions for breach of fiduciary duty "shall be commenced within three years after the cause of action accrues." Colo. Rev. Stat. § 13-80-101(1)(a), (f) (2002). Under the discovery rule for commencing the running of the statute of limitations, Plaintiffs were made aware of Upjohn's terminal disclaimer of the '812 Patent in 1985. Colo. Rev. Stat. § 13-80-108(6) (2002)

("A cause of action for breach of any express or implied contract, agreement, warranty, or trust shall be considered to accrue on the date the breach is discovered or should have been discovered by the exercise of reasonable diligence."). Once Plaintiffs received from Upjohn in 1986 a copy of the '812 Patent, which indicated that the patent would expire on February 13, 1996, Plaintiffs were aware of Upjohn's alleged breach. Since this suit was not filed until approximately a decade after this notice, Plaintiffs allowed the three-year Colorado statute of limitations to expire. Plaintiffs' argument that the cause of action did not accrue until 1996 because damages did not occur until 1996 is unpersuasive; "[u]ncertainty as to the precise extent of damage neither precludes the filing of a suit nor delays the accrual of a claim for purposes of the statute of limitations." Broker House Int'l., Ltd. v. Bendelow, 952 P.2d 860, 863 (Colo. Ct. App. 1998).

Plaintiffs' final effort to show entitlement to further royalties from Upjohn is based on their argument that the provisions of the Hatch-Waxman Act effectively extended the term of Upjohn's patent on minoxidil for three additional years (and three years' worth of royalties to the Plaintiffs). Aplt. Br. at 50-53. To put matters simply, the Hatch-Waxman Act allows the FDA to grant a drug manufacturer an extended "exclusivity" period. See Gerald J. Mossinghoff, Overview of the Hatch-Waxman Act and Its Impact on the Drug

- 11 -

Development Process, 54 Food & Drug L.J. 187, 189 (1999).  It is difficult to see, nonetheless, how a statute enacted four months after the parties here executed the ISA could have been part of the parties' intent.  Nothing in the terms of the ISA or in the record before this court indicates that the Hatch-Waxman exclusivity period and the term "patent" in the ISA are intended to be interchangeable.

Plaintiffs also raised before the district court a claim that Upjohn owed and violated a fiduciary duty of best efforts.  Since this claim has not been briefed on appeal, we deem it waived.  See State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 984 n.7 (10th Cir. 1994).  We also do not address Upjohn's argument that the Supreme Court's decision in Brulotte v. Thys Co., 379 U.S. 29 (1964), forbids the extraction of royalties on a patent beyond the patent's expiration.  Without taking a position on Brulotte's relevance, see Scheiber v. Dolby Labs., Inc., 293 F.3d 1014, 1017-19 (7th Cir. 2002), our interpretation of the contract language is dispositive.

AFFIRMED.